769 A.2d 1065 (2001)
338 N.J. Super. 415
Milagros BETANCOURT, on behalf of herself and her minor child, Taisha Merced; Rosa Blanco, on behalf of herself and her minor child, Jennifer Blanco, Plaintiffs-Respondents,
v.
TOWN OF WEST NEW YORK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 14, 2000.
Decided March 23, 2001.
*1066 Farmer & Campen, Union City, for appellant (George B. Campen, on the brief).
Cole, Schotz, Meisel, Forman & Leonard, Hackensack, and the American Civil Liberties Union of New Jersey Foundation, for respondents, (David M. Kohane and Lenora M. Lapidus, of counsel and on the brief; Edward S. Kiel and Karl J. Ashanti, on the brief).
Before Judges STERN, A.A. RODRIGUEZ and FALL.
The opinion of the court was delivered by RODRIGUEZ, A.A., J.A.D.
We affirm the judgment of the Chancery Division holding that the Town of West New York's (WNY) juvenile curfew ordinance No. 2074 (WNY Ordinance), enacted pursuant to N.J.S.A. 40:48-2.52, is unconstitutional. We concur with Judge Martin L. Greenberg's observation that this "holding shall not be construed as invalidating the Statute or condemning all juvenile curfews."
The facts are not contested. In 1992 the Legislature enacted N.J.S.A. 40:48-2.52, which authorized municipalities to:
enact an ordinance making it unlawful for a juvenile of any age under 18 years within the discretion of the municipality to be on any public street or in a public place between the hours of 10:00 p.m. and 6:00 a.m. unless accompanied by the juvenile's parent or guardian or unless engaged in, or traveling to or from, a business or occupation which the laws of this State authorize a juvenile to perform. Such an ordinance may also make it unlawful for any parent or guardian to allow an unaccompanied juvenile to be on any public street or in any public place during those hours.
The statute mandates that curfew ordinances include "exceptions permitting juveniles to engage in errands involving medical emergencies and to attend extracurricular school activities, and other cultural, educational and social events, sponsored *1067 by religious or community-based organizations after 10 p.m. and before 6 a.m." N.J.S.A. 40:48-2.52(d).
The following legislative findings supported the enactment of the statute:
The Legislature finds and declares that children who are left unsupervised during the overnight hours may be exposed to the most detrimental influences in society; that the allure of the rampant drug counter-culture, the potential for involvement in criminal activity, and other potential threats to the physical and mental health and welfare of children justify governmental action in furtherance of the protection of one of the most fragile and easily influenced segments of our society.
The Legislature further finds and declares that it is in the best interest of society to encourage family unity; to encourage the family unit to provide for the care, protection, and wholesome mental and physical development of children; to encourage the supervision of children by their parents and guardians and to encourage communication between them.
The Legislature further finds and declares that because of the peculiar vulnerability of children, their inability to make critical decisions in an informed, mature manner, and the importance of the parental role in child rearing, it is appropriate to authorize municipalities to enact ordinances to protect children from the dangers of the streets and to encourage the deepening of familial relationships.
[N.J.S.A. 40:48-2.52, Assembly Judiciary, Law and Public Safety Committee Statement.]
The following year and pursuant to N.J.S.A. 40:48-2.52, WNY adopted Ordinance No. 2074 (July 21, 1993), which provides in part:
It shall be unlawful for juveniles to be in any public place between the hours of 10:00 P.M. and 6:00 A.M. unless accompanied by a parent or guardian. This prohibition does not apply if said juvenile is:
(a) engaged in, or traveling to or from, a business or occupation which the laws of the State of New Jersey authorize a juvenile to perform;
(b) engaged in an errand involving a medical emergency;
(c) attending religious services, extra-curricular school activities, activities sponsored by a religious or community organization or other cultural, educational or social events or is in direct transit to or from such events.

[WNY Ordinance § 2.]
The penalty for conviction under the ordinance is community service of no more than ninety days and a fine of no more than $1,000. Id. § 3.
The mothers of Taisha Merced and Jennifer Blanco (plaintiffs) challenged the constitutionality of the ordinance based on the following facts. Taisha was arrested for violating the curfew five times between 1995, when she was thirteen, and 1998, when she was sixteen. She and her mother were ordered to perform community service. The activities she was engaged in when she was arrested were: (1) returning from her grandmother's house located two blocks away; (2) sitting on a neighbor's stoop across the street from her home; (3) returning home from a friend's house with an adult; (4) returning home from work while still in her McDonald's uniform; and (5) returning home from a movie. Her mother had given her permission to engage in all of these activities.
Jennifer was stopped by the police on four occasions between 1997 and 1998 for violating the curfew ordinance. She was *1068 taken to the police station after her first violation. Her mother was called. Jennifer was released with a warning. The second and third times she was arrested and released with a warning. The fourth time, she was arrested and both she and her mother were given summonses. The activities she was engaged in when she was stopped by the police were: (1) walking to a friend's house; (2) eating at a restaurant; and (3) returning home after staying at a friend's house. Her mother had given her permission for all of these activities.
Plaintiffs filed a six-count complaint alleging that the WNY Ordinance: violated Taisha's and Jennifer's rights, protected by the United States and New Jersey Constitutions, to travel, assemble, and associate (count one); violated plaintiffs' constitutional rights to direct the upbringing of their children (count two); was unconstitutionally vague (count three); violated the plaintiff's due process rights by subjecting them to penal sanction for the acts of their children (count four); violated the minors' equal protection rights by penalizing them for conduct that is not sanctioned when performed by adults (count five); and violated the State statute that prohibits warrantless arrests of juveniles unless they commit an offense that would be a crime if committed by an adult (count six). Plaintiffs requested preliminary and permanent injunctions prohibiting further enforcement of the ordinance and a declaration that the ordinance was unconstitutional. WNY answered the complaint. Judge Greenberg invited the Attorney General to intervene in the matter because it implicated the constitutionality of N.J.S.A. 40:48-2.52. The Attorney General declined to intervene.[1] The trial court granted a temporary injunction.
Plaintiffs moved for summary judgment on all claims. In a written opinion, Judge Greenberg found that the ordinance was unconstitutional, enjoined WNY from enforcing it, and dismissed plaintiffs' remaining claims with prejudice.
On appeal, WNY contends that the ordinance is valid because: (1) it is not an unconstitutional abridgement of the freedom of movement enjoyed by minors; (2) it does not violate the minors' First Amendment rights; (3) it does not interfere with any constitutional right of parents to control the upbringing of their children; (4) it is not unconstitutionally vague; (5) it does not provide for either strict or vicarious liability to be imposed upon parents; (6) it authorizes arrests which are not illegal, thus there is no basis for enjoining its enforcement; and (7) it does not violate any rights under the New Jersey Constitution.
We do not find it necessary to address all of WYN's contentions because we conclude that the ordinance is constitutionally deficient in two respects. First, the statutorily-mandated "exceptions" contained in sub-paragraphs (a), (b) and (c) of § 2, fairly construed, are not broad enough to recognize the right of parents to permit their children to participate in many legitimate activities. Such activities might include parent authorized at baseball, basketball, hockey or other sporting events sponsored by a private organization; going to the movies, or bowling, or visiting friends and relatives. Second, the language of exception (c) regarding "cultural, educational or social events" is unconstitutionally vague. Thus, whether judged by a "strict" scrutiny as employed by the trial *1069 court, or an "intermediate" scrutiny, as urged by WNY, the ordinance does not pass constitutional muster under either standard.
These are the applicable legal principles. Beginning in 1923, the Supreme Court has consistently recognized the fundamental right of parents to raise their children free of interference from the state. Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1391-92, 71 L.Ed.2d 599, 602-03 (1982) (holding unconstitutional a law that allows the State to terminate, over parental objection, the rights of parents in their natural child without clear and convincing evidence that the child is "permanently neglected"); Wisconsin v. Yoder, 406 U.S. 205, 234, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15, 36 (1972) (holding unconstitutional a high school attendance law that infringed on parents' rights to direct the religious upbringing and education to their children); Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070, 1078 (1925) (holding unconstitutional a statute that required children between the ages of eight and sixteen to attend a public school); Meyer v. Nebraska, 262 U.S. 390, 401, 43 S.Ct. 625, 627, 67 L.Ed. 1042, 1046 (1923) (holding unconstitutional a statute that prohibited the teaching of subjects in foreign languages to children before the eighth grade). New Jersey courts have also recognized that "a parent's interest in the `companionship, care, custody and management' of their children deserves special protection." In re Guardianship Servs. Regulations, 198 N.J.Super. 132, 144, 486 A.2d 888 (App. Div.1984), (quoting In re Guardianship of Dotson, 72 N.J. 112, 122, 367 A.2d 1160 (1976) (Pashman, J., concurring), aff'd as modified on other grounds, 103 N.J. 619, 512 A.2d 453 (1986)).
However, parents' rights are not absolute and may be subject to reasonable regulation when in the general interest of the child's well-being; e.g., child labor laws. Runyon v. McCrary, 427 U.S. 160, 178, 96 S.Ct. 2586, 2598, 49 L.Ed.2d 415, 429 (1976). Frequently, the state exercises authority as parens patriae when parents have either delegated or abdicated parental authority to the state. Thus, the majority of parental rights cases arise in school settings. Charles W. Gerdes, Note, Juvenile Curfew Challenges in the Federal Courts: A Constitutional Conundrum over the (Less than) Fundamental Rights of Minors, 11 St. Thomas L.Rev. 395, 408-09 (1999).
In cases where the government seeks to dictate facets of the parent-child relationship, it must overcome the strong constitutional presumption in favor of parental authority over governmental authority. See Reno v. ACLU, 521 U.S. 844, 878-79, 117 S.Ct. 2329, 2348, 138 L.Ed.2d 874, 902 (1997) (holding the Internet access regulation at issue violated parents' rights to regulate their children's use of computers as they see fit).
Generally, under federal constitutional law, a "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). A penal statute offends due process if it does not provide legally fixed standards and adequate guidelines for police and others who enforce penal laws. Papachristou v. City of Jacksonville, 405 U.S. 156, 170, 92 S.Ct. 839, 847, 31 L.Ed.2d 110, 120 (1972); Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983).
An ordinance that contains language that is so imprecise that it cannot be *1070 understood by persons of ordinary intelligence does not give fair notice of the acts which it forbids and, therefore, denies due process. Smith v. Goguen, 415 U.S. 566, 578, 94 S.Ct. 1242, 1249-50, 39 L.Ed.2d 605, 614 (1974). Vague language and inadequate standards permit the subjective and therefore impermissible enforcement of penal ordinances by the police. Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 227-28 (1972).
New Jersey courts have also recognized that "[i]t is offensive to fundamental concepts of justice and violative of due process of law ... to impose sanctions for violations of laws, whose language is doubtful, vague, and uncertain." Township of Maplewood v. Tannenhaus, 64 N.J.Super. 80, 89, 165 A.2d 300 (App.Div.1960), certif. denied, 34 N.J. 325, 168 A.2d 691 (1961). We have previously held that there is a risk of arbitrary enforcement in reviewing vague loitering and curfew ordinances. State v. Caez, 81 N.J.Super. 315, 319, 195 A.2d 496 (App.Div.1963). In Borough of Dumont v. Caruth, 123 N.J.Super. 331, 339, 302 A.2d 566 (Mun.Ct.1973), then Assignment Judge Morris Pashman, sitting temporarily in the Municipal Court of Dumont, observed that, "the key to judicial approval of [a loitering] ordinance appears to be in controlling the conditions in which police officers are empowered to act. The rationale of the cases seems to be that of preventing the police from choosing among potential perpetrators the one whom they intend to prosecute."
Thus, a legislative enactment is unconstitutionally vague if: (a) it fails to define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited;" and (b) if it fails to do so "in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983).
Here, the WNY curfew ordinance fails in both respects. Section 2 of the curfew ordinance for example provides exceptions for minors who are "engaged in an errand involving a medical emergency" and for those:
attending religious services, extracurricular school activities, activities sponsored by a religious or community organization or other cultural, educational or social events or is in direct transit to or from such events.

[WNY Ordinance § 4.]
The terms "social events," "cultural events," "activities sponsored by a community organization," "direct transit," "errand involving a medical emergency," and "cultural, educational or social events" are not defined. Their ordinary meaning is open to differing interpretations by reasonable individuals. Thus, the ordinance's language does not give a clear standard as to what conduct is forbidden. This, in turn, gives a police officer on the street broad discretion to decide which activities and which juveniles fall within the ordinance's exceptions.
The term "sponsored by a community organization" is equally vague. Although most would consider the Boy Scouts to be a community organization, would the local martial arts or ballet school also qualify? The ordinance's silence opens the door to subjective police evaluation of what conduct is proscribed.
A final example of vagueness is provided by the ordinance exception for minors who are "accompanied" by a person "who is acting in the place of the parent or who is responsible for the care and welfare of the juvenile." WNY Ordinance § 1(b). Under this definition, can an eighteen-year old babysitter be permitted to take the *1071 child he or she is caring for out into the public after 10:00 p.m.? The answer is not clear. Therein lies the constitutional failure of the WNY Ordinance. It cannot depend on subjective judgment calls by the police officers.
Affirmed.
STERN, P.J.A.D. (concurring).
I concur in the judgment of the court and in much of what is stated by the majority. However, I believe that our holding invalidating the ordinance should be premised on N.J.S.A. 40:48-2.52(e) which provides:
An ordinance enacted pursuant to this act shall establish clear standards in precise language adequate to apprise a juvenile and a parent or guardian of that which is unlawful and adequate to circumscribe the discretion of police officers in order to overcome subjective and discriminatory enforcement.
As noted in the statement of the Assembly Judiciary, Law and Public Safety Committee:
The bill requires an ordinance enacted pursuant to this act to establish clear standards in precise language adequate to apprise a juvenile and a parent or guardian of that which is unlawful and adequate to circumscribe the discretion of police officers in order to overcome subjective and discriminatory enforcement.
This case does not involve an ordinance containing an offensive or unlawful provision which can be severed; the exceptions are at the heart of what is authorized conduct and what is not permitted. The statement of the Assembly Judiciary Committee, quoted in the pocket part to the New Jersey Statutes Annotated, Annot. to N.J.S.A. 40:48-2.52, and which embodied amendments to the Senate version of the bill which were adopted as L 1992, c. 132, sec. 2, makes clear that "precise standards" are necessary in this area when dealing with the important and sensitive balance between the public welfare and parental responsibility, and are necessary to embody in an ordinance which purports to charge juveniles and their parents with a violation of law. By virtue of N.J.S.A. 40:48-2.52(e), the mere parroting of N.J.S.A. 40:48-2.52(d), or the use of its phraseology in the ordinance, is violative of the legislative authorization.
NOTES
[1] The Clerk of the Appellate Division has informed the Attorney General of the pendency of this appeal and has invited him to file a brief. The Attorney General has declined to do so.