833 A.2d 660 (2003)
363 N.J. Super. 474
STATE of New Jersey, Plaintiff-Respondent,
v.
Michaela B. GOLIN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 2003.
Decided October 29, 2003.
*661 Michaela B. Golin argued the cause pro se.
Michael C. Borgos, Assistant Mercer County Prosecutor, argued the cause for respondent (Joseph L. Bocchini, Jr., Mercer County Prosecutor, attorney; respondent did not file a brief).
Before Judges KING, BRAITHWAITE and LISA.
The opinion of the court was delivered by
LISA, J.A.D.
Defendant Michaela Golin, who acted pro se throughout these proceedings, was convicted on multiple summonses by the East Windsor Municipal Court for violating a municipal ordinance prohibiting the maintenance of a public nuisance and was sentenced to pay a total of $3370 in fines and court costs. The court's judgment was based on the fact that defendant allowed the branches of trees on her property to overhang and obstruct a public sidewalk. Defendant refused to cut the tree *662 branches for several months following her convictions and she received more than 100 additional summonses which remain outstanding. On appeal to the Law Division, R. 3:23-2, defendant was again convicted of the same offenses after a trial de novo, R. 3:23-8(a). The Law Division judge imposed fines and costs totaling $520.
In her appeal to this court, defendant's principal contention is that the ordinance under which she was convicted is unconstitutionally vague. We agree with this contention and reverse. Because of this disposition we do not address defendant's remaining arguments.[1]

I
The facts are not in dispute. After receiving a complaint on June 21, 2001 that tree branches in the right front corner of defendant's property were knocking down a neighbor's electrical lines, an East Windsor Health Department inspector went to defendant's property, saw an overgrowth of grass and weeds on the front lawn and tree branches overhanging the front sidewalk. She issued a Notice of Violation, giving defendant ten days to abate the nuisances. Defendant did not comply.
Defendant has never denied the description by the inspector of the condition of her property. She acknowledged in her testimony that tree branches extended all the way to the surface of the sidewalk. However, she contended the tree branches did not block passage on the sidewalk because the sidewalk ended in front of her house and there was very little traffic on it. Further, she explained her property adjoined a municipal sewer pump and the trees shielded her from the noise and fumes of heavy equipment that was often used to service the pump. She also claimed that the plants growing in her yard were not weeds but were "ornamental grasses" that were not in any way obnoxious. She asserted that tree branches obstruct sidewalks throughout the Township without prompting municipal action and opined that she was being singled out for prosecution. Defendant pursued the same arguments in support of her appeal to the Law Division. After that court delivered its opinion convicting defendant and imposing the lower fines, defendant promised she would trim the overhanging tree branches. She removed them on June 30, 2002, and no summonses have been issued against her since that date.
We recount the municipal court proceedings. On November 12, 2001, defendant appeared for trial on two summonses issued for failure to cut the grass and remove the overhanging tree limbs. The court found defendant guilty on both summonses and directed her to abate the nuisances prior to sentencing in order to minimize the fine that would be imposed.
At sentencing on December 3, 2001, defendant informed the judge that she cut the grass and weeds on her property but had not removed the tree branches. The judge set the fine at $500 and told defendant to remove the branches by the end of the day. When defendant appeared later that afternoon, she stated that the branches still had not been cut. The judge then merged the weed violation into the tree branch violation and set the fine at $1000 plus $30 in court costs. The judge warned defendant that the fine would increase by $100 per day until the problem was rectified.
On February 11, 2002, defendant again appeared in the municipal court in response *663 to thirty-six summonses that had been issued to her since the December 3, 2001 sentencing hearing. The judge again warned defendant that she would continue to receive summonses and that "eventually, the town is going to take your house." On February 25, 2002, defendant was tried on eighteen outstanding summonses, all for maintenance of a nuisance in the form of overhanging tree branches. The judge found defendant "guilty beyond any doubt" and imposed a fine of $100 per summons plus court costs of $30 per summons. The total fines and costs imposed on this occasion were $2340.
Defendant then filed her Law Division appeal. The Law Division judge found it unnecessary to address defendant's violation of the weed control ordinance because that conviction had been merged into her conviction for maintaining a nuisance in the form of overhanging tree branches, in violation of ordinance 18-3.1 §§ 2.1(a) and 2.1(b). After reviewing the municipal court record, the judge found there was proof beyond a reasonable doubt that the overhanging tree branches constituted a public nuisance. However, the judge further found there was no reasonable correlation between the number of fines imposed and the abatement of the nuisance. The judge therefore consolidated many of defendant's convictions and modified her sentences to a total of $520 in fines and costs. This appeal followed.

II
Defendant argues that East Windsor Ordinance 18-3.1 §§ 2.1(a) and 2.1(b) is unconstitutionally vague and vests unbridled discretion in municipal officials. She claims that because the ordinance does not refer to either trees or sidewalks, it is void and unenforceable. She further contends that as a penal ordinance, it must be strictly construed with all doubts resolved in her favor.
The East Windsor Municipal Code, 18-3.1 §§ 2.1(a) and 2.1(b), was adopted in accordance with N.J.S.A. 26:3-69.2 by reference to the Public Health Nuisance Code of New Jersey[2] (1953). Section 2.1 of the Public Health Nuisance Code of New Jersey provides:
The following matters, things, conditions or acts and each of them are hereby declared to be a nuisance and injurious to the health of the inhabitants of this municipality:
(a) Any matter, thing, condition or act which is or may become detrimental or a menace to the health of the inhabitants of this municipality.
(b) Any matter, thing, condition or act which is or may become an annoyance, or interfere with the comfort or general well-being of the inhabitants of this municipality.
The municipal court judge did not give serious attention to defendant's constitutional argument. Rather, he simply found that the ordinance is not overly broad and stated "I understand the basic due process concept. These ordinances are reasonably clear. They fulfill their obligations concerning due process. That's the end of the argument."
*664 The Law Division judge considered the issue more carefully, but also concluded that §§ 2.1(a) and 2.1(b) of the municipal code are not too vague to be applied. She referred to Fanelli v. City of Trenton, 135 N.J. 582, 641 A.2d 541 (1994); Betancourt v. Town of W. New York, 338 N.J.Super. 415, 769 A.2d 1065 (App.Div.2001); and Bynum v. Mayor of Winslow Tp., 181 N.J.Super. 2, 436 A.2d 532 (App.Div.1981), certif. denied, 89 N.J. 440, 446 A.2d 162 (1982), and observed that § 8.1 of the ordinance specifically requires that written notice be given of the conduct found to constitute a nuisance, thus providing the offender with notice of the violation and an opportunity to correct it. The judge concluded that the language of the ordinance, taken together with the procedure providing for specific notice, satisfies due process requirements.
Municipal court convictions may be appealed to the Law Division in accordance with the requirements of R. 3:23. R. 7:13-1; State v. Buchan, 119 N.J.Super. 297, 298, 291 A.2d 377 (App.Div.1972). The review in the Law Division is de novo on the record, although the court must give due regard to the municipal judge's opportunity to view the witnesses and assess credibility. State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). On appeal to this court, we must determine whether there is sufficient credible evidence present in the record to uphold the findings of the Law Division. Id. at 162, 199 A.2d 809. We are not, of course, required to afford any special deference to the Law Division's interpretation of the law and the legal consequences that flow from established facts. Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Local boards of health are authorized pursuant to N.J.S.A. 26:3-45 to pass ordinances to declare and define what constitutes a nuisance in all public and private places within their jurisdiction. Municipal ordinances are normally liberally construed in favor of the municipality and are presumed valid, with the burden of proving otherwise placed upon the party seeking to overturn the ordinance. Fanelli v. City of Trenton, supra, 135 N.J. at 589, 641 A.2d 541; Quick Chek Food Stores v. Springfield Tp., 83 N.J. 438, 447, 416 A.2d 840 (1980).
However, because municipal court proceedings to prosecute violations of ordinances are essentially criminal in nature, penal ordinances must be strictly construed. State, Tp. of Pennsauken v. Schad, 160 N.J. 156, 171, 733 A.2d 1159 (1999); Maplewood v. Tannenhaus, 64 N.J.Super. 80, 89, 165 A.2d 300 (App.Div. 1960), certif. denied, 34 N.J. 325, 168 A.2d 691 (1961). In interpreting a penal ordinance, a court must be guided by the rule of lenity, resolving any ambiguities in the ordinance in favor of a defendant charged with a violation. State, Tp. of Pennsauken v. Schad, supra, 160 N.J. at 171, 733 A.2d 1159; Maplewood v. Tannenhaus, supra, 64 N.J.Super. at 89, 165 A.2d 300. "Generally, under federal constitutional law, a `statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.'" Betancourt v. Town of W. New York, supra, 338 N.J.Super. at 422, 769 A.2d 1065 (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)).
A penal ordinance offends due process if it does not provide legally fixed standards and adequate guidelines for police and others who enforce the laws. Betancourt v. Town of W. New York, supra, 338 N.J.Super. at 422, 769 A.2d 1065 (citing *665 Papachristou v. City of Jacksonville, 405 U.S. 156, 170, 92 S.Ct. 839, 847, 31 L. Ed.2d 110, 120 (1972)); Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983)). "Vague language and inadequate standards permit the subjective and therefore impermissible enforcement of penal ordinances by the police." Betancourt v. Town of W. New York, supra, 338 N.J.Super. at 422, 769 A.2d 1065 (citing Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2299, 33 L. Ed.2d 222, 227-28 (1972)). To withstand a void-for-vagueness challenge, a penal ordinance must define the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L. Ed.2d 903, 909 (1983).
We have previously held that § 2.1(b) of the Public Health Nuisance Code of New Jersey is unconstitutionally vague. In Guidi v. City of Atl. City, 286 N.J.Super. 243, 244, 668 A.2d 1098 (App.Div.1996), defendant was issued a summons charging that she violated the Atlantic City municipal code by feeding pigeons, thus causing an accumulation of bird feces on buildings and vehicles in a residential street. The Atlantic City ordinance in question was taken directly from §§ 2.1(a) and 2.1(b) of the Public Health Nuisance Code of New Jersey and is identical to East Windsor Ordinance 18-3.1 §§ 2.1(a) and 2.1(b). 286 N.J.Super. at 245, 668 A.2d 1098.
In Guidi, we found that the language in § 2.1(b) prohibiting "any matter, thing, condition or act which is or may become an annoyance or interfere with the comfort or general well-being of the inhabitants of this municipality" subjected defendants to an unascertainable standard. Ibid. Noting that the ordinance left citizens at the mercy of its enforcers, we held that the violation of an ordinance should not depend upon which enforcement officer or which judge happens to be considering the actor's conduct. Id. at 245-46, 668 A.2d 1098. We determined that the ordinance was overbroad because it did not permit an enforcement officer, acting in good faith, "to point to objective facts that would lead a reasonable person to realize that his or her conduct was a violation of the ordinance." Id. at 246, 668 A.2d 1098. Although acknowledging that it would be impossible to draft an ordinance addressing all potential types of conduct posing a health hazard, we observed that the United States Supreme Court requires municipalities to enact ordinances "directed with reasonable specificity toward the conduct to be prohibited." Ibid. (quoting Coates v. Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L. Ed.2d 214, 217 (1971)). We concluded that "[t]he feeding of pigeons and other birds in a seaside community is a common enough problem that this conduct, if undesirable, should be specifically prohibited by ordinance." 286 N.J.Super. at 246, 668 A.2d 1098.
Applied to the case before us, Guidi requires a finding that East Windsor Ordinance 18-3.1 § 2.1(b) is unconstitutionally vague and unenforceable. Further, it is clear that Guidi requires a finding that East Windsor Ordinance 18-3.1 § 2.1(a) is unconstitutional as well. Sections 2.1(a) and 2.1(b) are of the same ilk. They both contain identical, vague language referring to "any matter, thing, condition or act." While § 2.1(b) pertains to things that are or may become "an annoyance, or interfere with the comfort or general well-being" of the community, § 2.1(a) pertains to things that are or may become "detrimental or a menace to the health" of the community. There is no discernable difference between these *666 two provisions. Both set forth unascertainable standards that encourage arbitrary and discriminatory enforcement. Thus, both are unconstitutionally vague.
Moreover, just as in Guidi, there is no reason that the municipality cannot enact a more specific ordinance to proscribe the objectionable conduct. Sidewalks and tree branches are at least as common in East Windsor as pigeons are in Atlantic City. If the obstruction of sidewalks by overhanging tree limbs presents a public nuisance, then it lies within the power of the local board of health to enact an ordinance specifically prohibiting such occurrences.
We reject the Law Division's determination that due process is satisfied by the ordinance's requirement that offenders receive notice and an abatement period before a summons is issued. See Guidi v. City of Atl. City, supra, 286 N.J.Super. at 245, 668 A.2d 1098. Although knowledge that the municipality considers certain behavior to be a nuisance allows ordinary people to understand that their conduct is prohibited by the ordinance, it does not prevent arbitrary or discriminatory enforcement of the ordinance in the first place. See Betancourt v. Town of W. New York, supra, 338 N.J.Super. at 423, 769 A.2d 1065 (setting forth the requirements for determining the constitutionality of penal ordinances). As the Supreme Court explained in Lanzetta v. N.J., 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L. Ed. 888, 890 (1939):
If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression.
Ordinance 18-3.1 §§ 2.1(a) and 2.1(b) is unconstitutionally vague. Its unconstitutionality is not cured by the fact that it requires offenders to receive a notice of violation before a summons is issued. Because the ordinance denied defendant due process of law, her convictions must be reversed and her fines returned.
Reversed.
NOTES
[1] Defendant's other arguments raised issues of selective enforcement, discovery violations, admission of hearsay evidence, and illegal sentence.
[2] The Public Health Nuisance Code of New Jersey is a general model code that was approved by the State Department of Health on September 16, 1953, for adoption by local boards of health. The code is still recommended by the Department of Health and Senior Services for use by local boards of health. See N.J.A.C. 8.52 App. (2003) "Programmatic Guidelines for Best Practices," I, "Public Health Nuisances" (a) (stating that investigations of public health nuisances shall be conducted in accordance with local ordinances which are at least equivalent to the Public Health Nuisance Code of New Jersey).