**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2333-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THOMAS NIMBLEY,

     Defendant-Appellant.

_____

         Argued November 4, 2019 – Decided November 26, 2019

         Before Judges Fasciale and Rothstadt.

         On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 18-024.

         Timothy Joseph Foley argued the cause for appellant (Foley & Foley, attorneys; Sherry L. Foley and Timothy Joseph Foley, on the briefs).

         Thomas A. Zelante, Assistant Prosecutor, argued the cause for respondent (Fredric M. Knapp, Morris County Prosecutor, attorney; Kimberly Lauren Tolentino, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from his February 4, 2019 de novo conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50. Defendant argues the State produced insufficient observation evidence, the judge did not give proper weight to his expert, and the judge ignored a BMW report depicting maintenance work done on his car before the incident. We disagree with these contentions and affirm.

We reject defendant's contention that there was insufficient evidence to find defendant guilty of DWI beyond a reasonable doubt. When a defendant appeals from a conviction entered in municipal court to the Law Division, the judge is required to conduct a de novo review of the record, giving "due regard to the municipal judge's opportunity to view the witnesses and assess credibility." State v. Golin, 363 N.J. Super. 474, 481 (App. Div. 2003) (citing State v. Johnson, 42 N.J. 146, 157 (1964)). On appeal from the Law Division, we determine whether the judge's findings "could reasonably have been reached on sufficient credible evidence present in the record." Johnson, 42 N.J. at 162. We do not "'weigh the evidence, assess the creditability of witnesses, or make conclusions about the evidence.'" State v. Locurto, 157 N.J. 463, 472 (1999) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). A trial court's legal conclusions and the legal consequences that flow from established facts are not

entitled to special deference; they are reviewed de novo. State v. Goodwin, 224 N.J. 102, 110 (2016).

Defendant drove his car off the roadway, through a split-rail fence, and then struck a tree, which deployed the airbags and ignited a fire in the car's engine. An officer arrived at the scene and detected an odor of alcohol from defendant's breath. The officer observed that defendant's face was flushed, he had bloodshot eyes, and that he had urinated on himself. Defendant told the officer that he had two martinis, and the officer administered field sobriety tests, which defendant failed.

The arresting officer testified credibly for the State. Defendant called two witnesses: an expert in field sobriety tests and his medical doctor. The field sobriety expert admitted he did not see the field tests because they were conducted off camera. His doctor did not attribute defendant's conduct to anything other than intoxication. Indeed, defendant declined medical attention at the scene of the accident. Defendant produced no evidence showing the accident was related to his BMW.

An officer's subjective observation of a defendant is a sufficient ground to sustain a DWI conviction. State v. Cryan, 363 N.J. Super. 442, 456-57 (App. Div. 2003) (sustaining DWI conviction based on observations of the defendant's

A-2333-18T2

bloodshot eyes, hostility, and strong odor of alcohol); State v. Cleverley, 348 N.J. Super. 455, 465 (App. Div. 2002) (sustaining DWI conviction based on the officer's observation of the defendant's driving without headlights on, inability to perform field sobriety tests, combativeness, swaying, and detecting an odor of alcohol on the defendant's breath); State v. Oliveri, 336 N.J. Super. 244, 251-52 (App. Div. 2001) (sustaining DWI conviction based on the officer's observations of the defendant's watery eyes, slurred and slow speech, staggering, inability to perform field sobriety tests, and admission to drinking alcohol earlier in the day).

The officer who administered the tests and arrested defendant testified that the weather was clear, the pavement was wet, and the temperature was around forty-degrees. Although defendant told the officer that "he may have hit some ice" on the road, the officer inspected the pavement and saw no ice. At first, defendant asserted he had not been drinking heavily, claiming he only had one or two martinis. However, defendant eventually admitted he drank two martinis.

As to the field sobriety tests, the officer testified:

> I asked him to recite the English alphabet out loud so I
> can hear him, and without singing. I asked him to start
> with the letter E, and end with the letter R.
>         . . . .

A-2333-18T2

He started with the letter E, and then began at the beginning of the alphabet.

The officer instructed defendant "to count on one hand; one, two, three, four, four, three, two, one" while defendant touched his fingertips together. He testified that defendant said he understood his instructions. The officer further stated that:

On the first cycle[,] [defendant] did not touch his fingertips together as instructed. He then asked if he was doing it right, so I demonstrated the test again. [Defendant] counted one, two, three, four, one, two, three, four, on the second attempt and did not touch his fingertips together[.]
. . . .

[On his final attempt, defendant] counted again, one, two, three, four, one, two, three, four, instead of one, two, three, four, four, three, two, one.

He testified that defendant performed the walk-and-turn test on flat pavement that was clear of debris. The officer said that there were no street lights present; only the officer's car's headlights and flashlight. He provided defendant with instructions:

I advised [defendant] to stand with his left foot on a line, we were using the fog line, I believe. With his right foot in front of his left foot, with the heel of his right foot touching the toe of his left foot, to keep his hands at his side and stay in that position. I instructed him to take nine heel-to-toe steps; [l]ooking at his feet, counting his steps out loud, keeping his hands to his

A-2333-18T2

side. After nine steps[,] [I told him to] turn towards his left in a counterclockwise fashion and then nine more steps heel-to-toe.

The officer also said he demonstrated this test for defendant. He concluded that defendant failed the test, stating:

He did not stand with his heel touching his toe in the starting position. He did not touch heel-to-toe on the first nine steps or the back nine steps. He paused in the middle of the test to ask me a question, and he did not turn as I instructed him to.

The officer also administered the one-leg stand test, to which he testified:

I told him to stand with his feet together and his hands at his side while I gave instructions. I told him to lift either foot, his left foot or his right foot, approximately six inches off the ground. Extend his foot and look at his foot, and []count out loud 1,001, 1,002, 1,003 until I told him to stop.
. . . .

[A]fter the first few seconds[,] [defendant] told me he couldn't do it.

Defendant stepped off the line, and he was not able to do any of the counting associated with this test. The officer concluded that defendant failed this test.

He also determined that defendant was under the influence because:

The crash for one, being that he went off the roadway for no apparent reason. There was no ice. There were no animals that he had mentioned. The odor of alcohol on his breath. The fact that he urinated in his pants[,] and his performance on the field sobriety tests.

6

Based on the above information, defendant's statement that he consumed two martinis before driving, and the officer's observation that defendant had blood shot eyes and a flushed face, the officer arrested defendant for DWI.

The Law Division judge deferred to the Municipal Court judge's credibility findings. He made his own factual findings that the weather was clear, the pavement was wet, traffic was light, defendant's eyes were blood shot, his face was flushed, he urinated in his pants, he admitted to drinking two martinis, and that his breath smelled of alcohol. Further, after considering the testimony from defendant's doctor, the judge found that no injury impaired defendant's lower extremities and cognitive abilities. Moreover, the judge found defendant failed several field sobriety tests.

We also reject defendant's contention that the judge failed to give any weight to his expert's testimony or the BMW report. We review a trial court's evidentiary determinations for an abuse of discretion. State v. Buda, 195 N.J. 278, 294 (2008). An abuse of discretion only arises when there is a "manifest error or injustice." Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (citation omitted). Such an error occurs when a judge's "decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an

impermissible basis." United States v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (citation omitted).

Defendant called Mr. Joseph Tafuni as an expert in DWI investigations. The expert opined that the one-leg stand and walk-and-turn tests' reliability was compromised due to defendant's age, the fact that the roadway was wet, and the officer's insufficient instructions for the tests. Relating to defendant's age, the expert stated that "[the walk-and-turn and one-leg stand tests were] researched [by] the NHTSA[, which] indicates individuals who are [sixty-five] years of age and above would have difficulty performing [these tests]." As to the walk-and-turn instructions, he stated:

> I noted that the officer did not use [a] line. It's required for police officers to use a real [line] whether it be a real line or an imaginary line. That's the focal point for a suspect. The officer did not tell [defendant] to maintain a starting position, which is the . . . left foot on a line, which was not use[d], heel of the right foot touching the toe and keeping his arms at his side. He did not instruct him to maintain that position.

As to the one-leg stand instructions, he testified:

> [The officer] skipped the maintain the starting position . . . . [He] failed to ask [defendant] if he understood the starting instructions to that point. The [o]fficer failed to instruct [defendant] to keep both legs straight when [performing] this test and to keep his arms at his side.
>          . . . .

> [However,] we were not able to see this officer demonstrating, nor could we see [defendant] performing the one-leg stand test[.]

The expert further testified that defendant may have failed because he may have been distracted by the active scene.

The Law Division judge specifically addressed this expert's testimony, noting:

> I have considered [the expert's] testimony and he pointed out some issues with . . . the standard field sobriety tests[,] but he conceded that he was obviously unable to observe the actual execution of the tests, since they were performed off camera.
>
> . . . .
>
> [The expert] was also not privy to the first-hand observations made by [the officer], such as the wetness of the road, [defendant's] bloodshot eyes, or the scent of alcohol on [defendant's] breath.

It is clear from the record that the judge considered the expert's testimony. The judge made specific findings as to why he gave little weight to this testimony.

Finally, the judge analyzed the BMW report and determined that there was no expert testimony showing a causal connection between the car's condition and the accident. He therefore ruled out any possibility that a mechanical difficulty caused the accident. As the judge correctly noted, "[t]here was simply no evidence."

We conclude that the judge's findings are based on sufficient credible evidence present in the record and that there exists sufficient credible evidence demonstrating defendant was guilty of DWI beyond a reasonable doubt.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2333-18T2