**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0507-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PHILLIP T. STOLFA,

    Defendant-Appellant.

_____

Submitted October 28, 2024 – Decided November 18, 2024

Before Judges Sabatino and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 23-001.

The O'Mara Law Firm, attorneys for appellant (Peter M. O'Mara, of counsel and on the brief).

Cleary Giacobbe Alfiere Jacobs, LLC, attorneys for respondent (Mark A. Lamartina, of counsel and on the brief).

PER CURIAM

Defendant Phillip T. Stolfa, the owner of a pit bull named Apollo, appeals from the Law Division's September 21, 2023 order reaffirming de novo the Borough of Shrewsbury Municipal Court's December 14, 2022 judgment finding him guilty of four violations of the Borough's Ordinance Section 67-2(A).

Section 67-2 prohibits dog owners in the Borough from allowing their dogs to "run at large" unleashed. The pertinent sections of the ordinance, A and B, read as follows:

> A.  No person owning, keeping or harboring any dog <u>shall suffer or permit</u> the same to run at large anywhere in the Borough, except upon the property of the person owning, keeping or harboring said dog.
>
> B.  Any dog off the premises of any person owning, keeping or harboring the same shall be accompanied by a person capable of controlling said dog and who has the dog upon a leash not exceeding 10 feet in length or in a crate or box or otherwise securely confined so as to prevent it from running at large.
>
> [(Emphasis added).]

In addition, a related provision, Section 67-1, reads:

> No dog shall be <u>permitted</u> to run at large at any time in the Borough of Shrewsbury, except as hereinafter provided.
>
> [(Emphasis added).]

A-0507-23

A violation of these provisions can result in fines between $50 and $1,250, a term of imprisonment of up to ninety days, a term of community service of up to ninety days, or "any combination thereof."  Borough of Shrewsbury, N.J., Ordinance 67-2.

The record shows that Apollo was observed or video recorded by a neighbor on multiple occasions walking across the neighbor's property. According to the neighbor's testimony, he had installed security cameras on his premises after several previous encounters with defendant's dog.  The cameras recorded video footage that was moved into evidence, without objection, at the municipal trial.

The first incident before us occurred on October 23, 2021, when the neighbor saw Apollo walking unattended on his driveway.  A person who resides with defendant—who was the sole witness he presented in his defense at trial— testified that she was in the backyard of their residence when she saw Apollo head towards a gate between the two houses.  According to that defense witness, she was unaware Apollo had left the property until she noticed the dog in the neighbor's yard.  She contended she quickly called Apollo back to defendant's property.

A-0507-23

The neighbor reported that first incident and defendant was cited with a violation of Section 67-1. After that summons issued, four more incidents ensued on November 28, 2021, December 21, 2021, March 22, 2022, and April 16, 2022. The November 2021 and December 2021 incidents were combined in one summons, and the March 2022 and April 2022 incidents each prompted a separate summons. Each summons charged a violation of Section 67-2(A).

The prosecution's evidence at trial consisted of the neighbor's testimony, the video footage, and screenshots derived from the videos. In closing argument, defense counsel submitted that defendant should be acquitted of the violations because the prosecution had not proven scienter or a culpable state of mind. Counsel asserted defendant had taken no actions to permit or allow Apollo to "run at large," and that he had taken steps to prevent the dog's elopement. The defense further argued the incidents were de minimis and "borderline," contending that no humans were affected by the dog's behavior.

The municipal judge found defendant not guilty of the October 2021 violation, deeming that incident "momentary" and one that "quickly abated." The judge found defendant guilty of three of the subsequent violations beyond a reasonable doubt. With respect to the November 2021 incident, the judge noted the video evidence showed the dog, unattended and unleashed, growling

while the neighbor was bringing a trash can from the side of his home, causing the neighbor to make "an immediate and hasty retreat" inside.

In his written findings of fact, the municipal judge noted that defendant already had been found guilty of violations of Section 67-2(A) on three previous occasions in September 2019, May 2021, and August 2021. Except for the November 2021 incident, the judge recognized that no persons otherwise appeared to have been physically threatened or harmed by the unleashed dog. Nonetheless, the judge underscored the "danger . . . imposed upon the safety of the complainant and his family and the interruption of his right to quiet enjoyment of his premises . . .[.]" The judge further noted the repetitive nature of the seven proven violations occurring between 2019 and 2022, finding that "the safety of the complainant's family and the public has been repeatedly jeopardized by the number, proximity, and frequency of the alleged offenses."

The judge consequently imposed a $350 fine for the November 2021 and December 2021 violations, a $450 fine for the March 2022 violation, and a $550 fine for the April 2022 violation, plus court costs. In imposing these fines and costs, the judge noted the repeat nature of the violations and "the need to deter this conduct in the future."

5

Defendant appealed his conviction to the Law Division. In his de novo appeal, defendant argued that he lacked what he contends is the requisite knowledge and intent to violate the ordinance. The Law Division rejected those arguments and upheld the convictions in a written opinion by Judge Michael A. Guadagno dated September 21, 2023. In his decision, the Law Division judge cited an opinion from over a century ago, Conner v. Fogg, 75 N.J.L. 245, 247 (Sup. Ct. 1907), which defines the term "to permit" as to "suffer[] the doing of a thing which he might have prevented." The Law Division judge reasoned that is what defendant engaged in here, after having been cautioned multiple times that his dog was running about illegally without a leash.

In the concluding portion of his analysis, the Law Division judge made these observations:

> Common sense and human experience inform that domesticated dogs running at large are generally not intentionally released by their owners. Rather, they escape through the negligence of their owner, the wiles or cunning of the animal, or a combination of both. Defendant's argument that he can only be convicted if the State proves that he intentionally released Apollo to roam the neighborhood is illogical . . . [.]
>
> Moreover, defendant was on notice long before the first summons was issued in this matter that Apollo had a penchant for wanderlust . . . . Other than the one occasion where [defendant's co-habitant] happened to observe Apollo's flight from the confines of defendant's

6

yard, the record is devoid of any efforts taken by defendant to address the dog's numerous escapes.

The Law Division judge also affirmed the municipal court sentence, deeming "the escalating fines" an appropriate response to the repeated violations.

In his present appeal, defendant essentially reiterates the state-of-mind arguments he previously asserted. His brief advocates the following overarching point:

POINT I

THE EVIDENCE PRESENTED BELOW DID NOT ESTABLISH BEYOND A REASONABLE DOUBT THAT [DEFENDANT] VIOLATED THE BOROUGH ORDINANCE IN QUESTION.

Having duly considered these arguments, we affirm, substantially for the sound reasons set forth in the Law Division judge's opinion. We add the following by way of amplification.

Our scope of review in this context is guided by the well-established "two-court" principle of affording deference to the factual findings of a municipal court that have been upheld, de novo, by the Law Division. State v. Locurto, 157 N.J. 463, 474 (1999) ("[u]nder the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional

7

showing of error"); see also State v. Reece, 222 N.J. 154, 166 (2015) (quoting and applying this principle).

In the de novo context, the Law Division judge must "determine the case completely anew on the record made in the [m]unicipal [c]ourt." State v. Johnson, 42 N.J. 146, 157 (1964). When doing so, the Law Division must give "due regard to the municipal judge's opportunity to view the witnesses and assess credibility." State v. Golin, 363 N.J. Super. 474, 481 (App. Div. 2003); see also Johnson, 42 N.J. at 157. However, our review of the Law Division judge's legal determinations is plenary. State v. Kuropchak, 221 N.J. 368, 383 (2015).

Defendant maintains the record lacks sufficient proof that he possessed a culpable state of mind to violate Section 67-2(A). He argues a conviction of that ordinance provision requires the State to prove scienter, i.e., a purposeful intent by a defendant to violate the law. In this regard, defendant refers to the general requirements of culpability describing in the Criminal Code at N.J.S.A. 2C:2-2(b), defining, in decreasing order of culpability, an individual who acts purposely, N.J.S.A. 2C:2-2(b)(1); knowingly, N.J.S.A. 2C:2-2(b)(2); recklessly, N.J.S.A. 2C:2-2(b)(3); and negligently, N.J.S.A. 2C:2-2(b)(4).

Defendant argues none of those culpable states of mind defined in the Criminal Code were proven here. He submits there is no evidence in the record that he "permitted, encouraged, or allowed in any way his dogs to leave his property." He further argues the State did not show that he was home, nearby, or in the Borough when the dog appeared on his neighbor's property. In addition, defendant contends that any violations were, at worst, de minimis.

As the Law Division judge correctly noted, a key phrase within Section 67-2(A) is that no defendant owning or harboring a dog "shall suffer or permit" that dog to run at large beyond the defendant's premises. The ordinance does not define the phrase. However, the Law Division points out, the ordinary meaning of the terms "suffer" and "permit" is illuminated by dictionary definitions and case law.

Black's Law Dictionary defines "permit" as: "1. To consent to formally; to allow (something) to happen, esp. by an official ruling, decision, or law <permit the inspection to be carried out>. 2. To give opportunity for; to make (something) happen <lax security permitted the escape>. 3. To allow or admit of <if the law so permits>." PERMIT, Black's Law Dictionary 1374 (12th ed. 2024) (emphasis added). In a similar vein, Merriam-Webster defines "permit": "1. To consent to expressly or formally <permit access to records>. 2. To give

leave, authorize. 3. <u>To make possible</u> <the design permits easy access>." PERMIT, <u>Merriam-Webster's Dictionary</u>, https://www.merriam-webster.com/dictionary/permit (last visited Nov. 8, 2024) (emphasis added).

By comparison, the term "suffer" is defined in Black's Law Dictionary to encompass, among other things: "<u>To allow or permit</u> (an act, etc.) <to suffer a default>." SUFFER, <u>Black's Law Dictionary</u> 1739 (12th ed. 2024) (second definition) (emphasis added). Similarly, Merriam-Webster likewise includes the following within its definitions of "suffer": "To allow <u>especially by reason of indifference</u>." SUFFER, <u>Merriam-Webster's Dictionary</u>, https://www.merriam-webster.com/dictionary/suffer (last visited Nov. 8, 2024) (emphasis added).

Although the two terms are overlapping, the term "permit" generally conveys a more active connotation, often but not always indicative of authorization or consent. "Suffer," on the other hand, more commonly is understood to connote the concept of passively allowing something to happen.

Case law supports these common notions of "permit" and "suffer" that do not require intentionality: As we noted above, in <u>Conner v. Fogg</u>, cited by the Law Division, the former Supreme Court of New Jersey construed the term "to permit" to mean to "suffer[] the doing of a thing which he might have prevented." 75 N.J.L. at 247. Later in <u>Greenbrier, Inc. v. Hock</u>, 14 N.J. Super.

39, 43 (App. Div. 1951), a case involving a defendant's violation of a municipal ordinance that used the words "permit," "allow" and "suffer," we noted the term "'suffer' . . . imposes responsibility on a licensee, regardless of knowledge, when there is a failure to prevent the prohibited conduct."

As the municipal court and the Law Division reasonably found, there is ample credible evidence in the record to support the findings that defendant violated Section 67-2(A) on multiple occasions. It is no defense that defendant may not have been on the premises each time his dog was roaming about, unleashed. The ordinance does not make the dog owner's presence an element of the offense. The incidents were filmed on video, which the courts found to be persuasive. The neighbor's testimony was deemed credible, and we defer to that assessment. Defendant has not made a "very obvious and exceptional showing of error." Locurto, 157 N.J. at 474.

We appreciate defendant's contention that it is "a reality of life" that "every once in a while, a dog might get loose." But that is exactly what the ordinance seeks to minimize and deter, in the interests of public safety. We need not reach defendant's argument that his convictions were based on a theory of strict liability. Because defendant's dogs had been roaming free before, defendant was surely aware of the need to take more effective measures to

11

restrain them in the future. He was on notice, as a repeat violator, that he could not continue to permit or suffer further incidents without consequence. We also reject, as did the Law Division, defendant's argument that the incidents were merely de minimis. The repeated events that produced convictions were not trivial, and the Borough had the authority to sanction them. The municipal court showed it was mindful of de minimis principles by acquitting defendant of the October 2021 incident that his companion had quickly and safely resolved.

To the extent we have not mentioned them, we have considered all other arguments raised on appeal, and they lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-0507-23